IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03594-KLM

TILITHA ALLEN,

    Plaintiff,

v.

WAL-MART STORES, INC.,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion for Summary Judgment** [#56][1] ("Defendant's Motion") and on Plaintiff's **Motion for Summary Judgment and Memorandum of Law** [#57] ("Plaintiff's Motion"). Plaintiff filed a Response [#64] in opposition to Defendant's Motion [#56], and Defendant filed a Reply [#69]. Defendant filed a Response [#65] in opposition to Plaintiff's Motion [#57], and Plaintiff filed a Reply [#70]. The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises.[2] For the reasons set forth below, Defendant's Motion [#56] is **DENIED**, and Plaintiff's Motion [#57] is **DENIED**.

---

[1] [#56] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. See [#11, #12].

## I. Background

Defendant formerly employed Plaintiff for about eighteen years, from June 1979 to 1986 and then from 1990 to October 10, 2001. *Depo. of Pl.* [#57-2] at 45, 50. Plaintiff later joined a nationwide class of individuals asserting that Defendant discriminated against female employees on the basis of their gender, but the United States Supreme Court eventually reversed certification of the class, although it allowed the former class members to thereafter file individual EEOC charges and lawsuits. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). After receiving her right-to-sue notice from the EEOC, Plaintiff filed this lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, asserting a single claim of disparate treatment based on gender with respect to her pay and promotional opportunities, specifically promotion to the position of District Photo Manager. *See generally Compl.* [#1]. In the present Order, the Court addresses the parties' cross-Motions [#56-#57], where each seeks favorable summary judgment on all aspects of Plaintiff's gender discrimination claim.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(a), summary judgment should be entered if the pleadings, the discovery, any affidavits, and disclosures on file show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248. The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [her] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may

be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
> . . .
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

### III. Analysis

**A.     Rule 30(b)(6) Deposition**

At the outset, the Court addresses Plaintiff's request for sanctions under Fed. R. Civ. P. 37(d)(1)(A)(i) based on Defendant's alleged failure to provide a properly prepared corporate representative designated for Defendant's deposition under Fed. R. Civ. P. 30(b)(6). *Motion* [#57] at 22-26. On April 15, 2021, following argument by the parties, the Court limited certain topics in Plaintiff's Rule 30(b)(6) deposition notice. *Minute Order* [#49]. Plaintiff issued an amended notice on June 1, 2021, and the deposition was held on June 8, 2021. *See Ex. EE* [#57-31]. Plaintiff asserts that Defendant did not prepare its representative to answer questions regarding the subjective decisions of the corporation, as outlined in Topics 4 and 5 of the amended notice. *Motion* [#57] at 24. As a sanction, Plaintiff asks the Court to direct that three specific facts be deemed established and that Defendant be prohibited from opposing them or setting forth

–4–

evidence supporting the contrary: (1) "[d]uring Plaintiff's time as a Photo Center Manager, there were opportunities for promotion to photo district manager," (2) "Plaintiff was qualified for those positions," and (3) "Defendant promoted men into those positions."  *Id.* at 25.

The Court does not reach the merits of Plaintiff's argument because the request for sanctions is procedurally improper on three grounds.  First, requests for sanctions relating to discovery conduct are discovery issues which must be addressed through the undersigned's discovery dispute procedures, *see* [#18-1], and should not be briefed unless otherwise directed by the Court.   Plaintiff's request may therefore be denied solely for failure to follow these procedures.

Second, the undersigned's Civil Motions Practice Standards [#13] require that "[a]ll requests for the Court to take any action, make any type of ruling, or provide any type of relief must be contained in a separate, written motion," with a few exceptions not applicable here.   Plaintiff's request for sanctions was buried at the end of its Motion [#57], with no indication that a Rule 37 motion was included in either the title or the opening paragraphs of the filing.   Such motions practice is inappropriate.   Plaintiff's request should have been filed as a separate motion or, at a bare minimum, flagged at the outset so the Court was aware when the filing was made that multiple requests for relief were being made.

Third, "[b]efore filing a motion, counsel for the moving party . . . shall confer or make reasonable, good faith efforts to confer with any opposing counsel . . . to resolve any disputed matter.   The moving party shall do describe in the motion . . . the specific

–5–

efforts to fulfill this duty." D.C.COLO.LCivR 7.1(a). The Local Rules provide an exception to this duty to confer for any motion filed under Fed. R. Civ. P. 56. D.C.COLO.LCivR 7.1(b)(3). Here, there is no indication in Plaintiff's Motion [#57] that Plaintiff conferred with Defendant regarding her request for relief under Rule 37(d)(1)(A)(i), and there is no conferral exception for relief requested under this rule. In its Response [#65], Defendant confirms the lack of conferral by providing a Declaration [#65-7] from its counsel Attorney David Gartenberg, where he states that "Plaintiff's counsel did not meet and confer with counsel for Walmart before moving for sanctions under Fed. R. Civ. P. 37 in Plaintiff's summary judgment filing (Doc. #57)." *See* [#65-7] ¶ 2. Plaintiff does not address this issue in her Reply [#70]. Thus, Plaintiff's request for sanctions under Rule 37 may be denied on this basis alone as well.

Accordingly, for the reasons set forth above, Plaintiff's request for sanctions under Rule 37 is **denied**.

**B.     Gender Discrimination**

"To survive summary judgment on a Title VII claim of discrimination based on race, color, religion, sex, or national origin, a plaintiff must present either direct evidence of discrimination or indirect evidence that satisfies the burden-shifting framework" of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019). "Under the *McDonnell Douglas* framework, a plaintiff must first raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Id.* (internal quotation marks omitted). "The burden then shifts to the employer to offer a legitimate nondiscriminatory reason for

its employment decision." *Id.* (internal quotation marks omitted). "If the employer does so, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (internal quotation marks omitted).

Here, the Court has carefully reviewed the parties' briefs and the evidence submitted. *See Boyz Sanitation Serv., Inc. v. City of Rawlins, Wyo.*, 889 F.3d 1189, 1195 (10th Cir. 2018) ("Where, as here, we are presented with cross-motions for summary judgment, we must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor."). The Court addresses several legal issues raised by the parties in the sections below. Taking into account the resolution of those issues, the Court ultimately finds that both Motions [#56, #57] must be denied because of a plethora of factual disputes. *See Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir. 2004) ("On cross-motions for summary judgment, . . . we must view the inferences to be drawn from affidavits, attached exhibits and depositions in the light most favorable to the party that did not prevail."). To identify but a few of these material factual disputes, they are as follows: was Plaintiff one of the top paid Photo Lab Managers employed by Wal-Mart? Are the differences between Plaintiff's pay and that of her alleged pay comparators accounted for by differences in performance evaluation scores, background and experience? Did Plaintiff seek a promotion to Photo District Manager after August of 1995 when her request was documented in her evaluation? Why were certain associates promoted to Photo District Manager positions during the time when Plaintiff says she wanted the job? Based on

these and other factual disputes, entry of summary judgment in either party's favor is inappropriate at this time. *See Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) ("Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

  1. **Pay Discrimination**

Title VII prohibits "discriminat[ing] against any individual with respect to [her] compensation . . . because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). "To establish a prima facie case, a female plaintiff alleging sex discrimination must show she occupied a job similar to that of higher paid males." *Nazinitsky v. INTEGRIS Baptist Med. Ctr., Inc.*, 852 F. App'x 365, 367-68 (Mem) (10th Cir. 2021) (citing *Riser v. QEP Energy*, 776 F.3d 1191, 1200 (10th Cir. 2015)).

The Court addresses several legal issues here raised by Defendant. First, Defendant appears to suggest that Plaintiff is limited to the pay comparators mentioned in her EEOC Charge, Amended Complaint, written discovery responses, and deposition testimony (all of whom Defendant asserts it addressed in its Motion [#56] seeking summary judgment), and that Plaintiff may not utilize other potential comparators in support of her claim. *Response* [#69] at 4-5. As a general matter, on a motion for summary judgment, a party may use all evidence adduced during discovery to support its position. *See* Fed. R. Civ. P. 56(c). Defendant cites no legal authority in support of its proposition, and the Court has not found any case which would cause it to deviate from the baseline rule. Thus, to the extent supported by evidence, Plaintiff may point to other

pay comparators not addressed by Defendant in its Motion [#56], even if not specifically mentioned in her EEOC Charge, Amended Complaint, written discovery responses, and deposition testimony.

Second, Defendant essentially argues that Plaintiff's pay discrimination prima facie case is subject to a higher burden than the law requires. As noted above, a plaintiff's prima facie case under the *McDonnell Douglas* framework is modified depending on the type of alleged discrimination. *Bekkem*, 915 F.3d at 1267. To meet her burden under this first step of the *McDonnell Douglas* frame, Plaintiff need only show that *her job was similar to that of a higher paid male*. The Tenth Circuit Court of Appeals has repeatedly framed the inquiry in this manner. *See, e.g.*, *Nazinitsky*, 852 F. App'x at 367-68; *Salemi v. Colo. Pub. Emps.' Ret. Assoc.*, 747 F. App'x 675, 693 (10th Cir. 2018); *Riser*, 776 F.3d at 1200; *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 636 (10th Cir. 2012); *Johnson v. Weld County, Colorado*, 594 F.3d 1202, 1215 (10th Cir. 2010); *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006); *Block v. Kwal-Howells, Inc.*, 92 F. App'x 657, 660 (10th Cir. 2004); *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997).[3] Thus, the inquiry at this first step is exceedingly straightforward: (1) was there another job similar to that held by the female plaintiff, (2) if so, was that job held by a male, and, if so, (3) was that male paid more than the plaintiff? To the extent other

---

[3] The Tenth Circuit in *Mickelson* did mention that, "[u]nder Title VII, the plaintiff always bears the burden of proving that the employer intentionally paid her less than a similarly-situated male employee." *Mickelson*, 460 F.3d at 1310. However, in light of the plethora of case law decided both before and after *Mickelson*, as well as *Mickelson* itself, which otherwise solely frames the relevant inquiry as a "job similar to that of higher paid males," the Court finds this statement to simply refer to the similarity of the jobs held by the employees rather than to other, unrelated similarities of the employees themselves.

considerations are pertinent to a pay discrimination claim (such as, by way of example only, whether the male employee had a longer tenure with the company or better performance reviews than the female plaintiff), they may be addressed at later steps of the *McDonnell Douglas* framework.

The cases on which Defendant relies do not alter the Court's conclusion here. In *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000), the Tenth Circuit Court of Appeals addressed a claim of discriminatory termination, stating that "a plaintiff may also show pretext on a theory of disparate treatment by providing evidence that he was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness." The Circuit did not address the required showing for a prima facie pay discrimination claim under Title VII. Similarly, in *English v. Colorado Department of Corrections*, 248 F.3d 1002, 1008 (10th Cir. 2001), the Tenth Circuit merely addressed the appropriate standard to be applied for discriminatory termination claims, emphasizing, that, in those cases, "a plaintiff does not have to show differential treatment of persons outside the protected class to meet the initial prima facie burden under *McDonnell Douglas*," which is clearly inapplicable to a pay discrimination claim, where a plaintiff must do so, as discussed above. Defendant also cites *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978), for the general proposition that "[t]he method suggested in *McDonnell Douglas* for pursuing this inquiry, however, was never intended to be rigid, mechanized, or ritualistic." While true, this statement does not clarify the standard to be applied to Title VII pay discrimination claims.

Defendant cites no other binding legal authority but instead relies on a number of

unpublished, mostly out-of-circuit cases to support its argument. In *McDonald-Cuba v. Santa Fe Protective Services, Inc.*, No. 09-cv-554 WJ/DJS, 2010 WL 11496952, at *6 (D.N.M. June 4, 2010), the only other intra-circuit case cited by Defendant, the court stated that "[i]ndividuals are considered 'similarly-situated' when they (1) have dealt with the same supervisor; (2) were subjected to the same work standards; and (3) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." However, the legal authority relied on for this standard was based on an age discrimination case involving alleged discriminatory discipline, failure to promote, and retaliation, not pay discrimination. *McDonald-Cuba*, 2010 WL 11496952, at *6 (citing *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005)).

Defendant further cites three out-of-circuit cases in support of its argument. Defendant first points to *Lishamer v. Wal-Mart Stores, Inc.*, No. 15 C 6159, 2018 WL 620037, at *4 (N.D. Ill. Jan. 30, 2018), for the proposition that "[d]ifferent employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently." However, again, this statement is made in the context of alleged discriminatory failure to promote, not in the context of pay discrimination.

Next, on remand from the United States Supreme Court, the district court in *Dukes v. Wal-Mart Stores, Inc.*, No. 3:01-cv-02252-CRB, 2015 WL 3623481, at *4 (N.D. Cal. June 10, 2015), relied on the Tenth Circuit's *English* case regarding discriminatory

termination to note that a plaintiff "'can not pick and choose a person [she] perceives is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably than [she]." While certainly important for a jury in determining whether pay discrimination occurred, this statement does not speak to the issue of whether Plaintiff has identified a male with a similar job who was paid more than her.

Finally, the decision in *Medeiros v. Walmart, Inc.*, No. 5:19-cv-00037, 2021 WL 1320719, at *7 (W.D. Va. Apr. 8, 2021), relied on Fourth Circuit Court of Appeals legal authority, which utilizes a much broader legal standard than used in the Tenth Circuit. The Fourth Circuit has stated that a pay comparator must be similarly situated "in all relevant respects," under which "courts consider whether the employees had the same job description and were subject to the same standards; whether they had comparable experience, education, qualifications, and performance; and whether they had the same supervisor(s)." *Medeiros*, 2021 WL 1320719, at *7.  This is simply not the standard utilized by the Tenth Circuit, which focuses solely on the similarity of the jobs for purposes of making a prima facie case.   As noted above, to the extent these other considerations may be applicable, they may be addressed at later steps of the *McDonnell Douglas* framework.  Thus, insofar as Defendant argues that Plaintiff's comparators are inappropriate because they did not have the same decision-maker regarding pay as Plaintiff did, the Court finds the argument to be without merit.[4]

---

[4] In *Dukes*, 2015 WL 3623481, at *4, the court explicitly rejected the defendant's assertion that "comparators must report to the same supervisor to be similarly situated" in the context of pay discrimination, which also supports the Court's conclusion here that, despite the

Separately, Defendant notes that four of Plaintiff's five comparators earned less than she did at certain times during the relevant period, but Defendant points to no legal authority demonstrating that this is inappropriate at the prima facie stage of the inquiry. *Response* [#65] at 21 n.5.  Although such evidence certainly may be important to the trier of fact in determining whether pay discrimination occurred, the Court has been unable to find any legal authority holding that, simply because a comparator *sometimes* earned less than the plaintiff, then the prima facie requirements cannot be met.  In fact, this *could* be a common situation.  For example, at the start of the period, a female plaintiff may be earning more than a male employee, but if the male employee then receives a large pay increase such that he is paid more, there is at least colorable potential for pay discrimination.  Thus, the Court cannot find for purposes of summary judgment that these comparators are inappropriate as a matter of law.

Lastly, Defendant also argues that two of Plaintiff's five comparators were earning more than she did before the statute of limitations period started.  *Response* [#65] at 21 n.5 (citing *Dukes*, 2015 WL 3623481, at *1-3; *Chapman v. Wal-Mart, Inc.*, No. 5:20cv00105, 2021 WL 2379810, at *4 (W.D. Va. June 10, 2021)).  In *Dukes*, the court held that claims based on actions which occurred prior to December 26, 1998, were time-barred because they occurred more than 300 days before the operative EEOC charge was filed.  In *Chapman*, the court held that the plaintiff's claims based on her *starting* salary were time-barred because she was hired to the position at issue more than 300 days before the operative EEOC charge.  Here, however, it is unclear from the parties'

---

law in the Fourth Circuit, this is not a universal requirement at the prima facie stage of the case.

briefs whether Plaintiff's claims as to these two comparators are based solely on events occurring before December 26, 1998, or whether they are based at least in part on further pay-related decisions occurring after that date. Thus, the Court cannot find that, simply because two comparators were earning more than Plaintiff at the start of the relevant period, these two comparators are inappropriate as a matter of law for purposes of summary judgment.

### 2. Failure to Promote to Photo District Manager

Plaintiff argues that, if she establishes a prima facie case as to failure to promote, and the employer "is silent in the face of the presumption [of unlawful discrimination], the court must enter judgment for the plaintiff because no issue of fact remains in the case." *Motion* [#57] at 18. In support, Plaintiff relies on *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981), in which the Supreme Court stated:

> The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination. . . . [T]he prima facie case raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.

(internal footnote and quotation marks omitted).

Defendant, in turn, points to an exception to this general rule. *Response* [#65] at 16. In *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1278-80 (1999), the Tenth Circuit Court of Appeals, itself relying heavily on *Burdine*, stated:

First, we believe that Defendants met their burden of production. The defendant's burden to articulate a nondiscriminatory reason has been characterized as an exceedingly light one. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To satisfy this burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. However, the determination that a defendant has met its burden of production . . . involves no credibility assessment. The Supreme Court emphasized . . . that, by producing evidence (whether ultimately persuasive or not) of nondiscriminatory reasons, employers sustain their burden of production, and thus place themselves in a better position than if they had remained silent.

Defendants met their burden by articulating a legitimate, nondiscriminatory reason and by supporting it with trial testimony. Their explanation, however, is unique because Plaintiff was not known to or remembered by Defendants when this suit was filed. Consequently, the premise of Defendants' explanation was that, based on their review of their personnel records and application files, they had no record that Plaintiff ever applied for a pharmacist position. . . .

In effect, the reason proffered and the evidence presented by Defendants was grounded in their lack of knowledge as to who Plaintiff was, what kind of applicant he was, and why they did not hire him. Because of this lack of knowledge, Defendants could only make reasoned judgments about why they did not hire or interview Plaintiff. Defendants surmised that they had no record of Plaintiff's applications because (1) he never applied, (2) his applications were lost or discarded by the personnel department, or (3) his applications were rejected because of facial deficiencies. Prospective employers who are in this unique and seemingly uncommon posture should not be stuck without a legitimate, nondiscriminatory explanation, and we know . . . that their only alternative--remaining silent--would place them in an untenable position. If we accepted Plaintiff's argument, such prospective employers would never be able to rebut a prima facie case because they would be unable to proffer a reason other than that they did not have a record of their relationship to the plaintiff. This result is not consistent with the intent of Title VII or our case law. Accordingly, we conclude that Defendants' explanation is the only legitimate one that they possibly could have proffered which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.

(internal citations, quotation marks, and alterations omitted).

Thus, although a plaintiff who establishes her prima facie case, and therefore raises an inference of discrimination, is entitled to judgment in her favor when that inference is rebutted by *no* evidence, as stated in *Burdine*, providing evidence of *lack* of a known reason is sufficient for a defendant at the second step of the *McDonnell Douglas* test, as stated in *Anaeme*. Therefore, in light of evidence that, as construed most favorably to Plaintiff, Defendant lacks a known reason for failing to promote Plaintiff, Plaintiff's argument that she is entitled to summary judgment on this basis alone is without merit.

## IV. Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that Defendant's Motion [#56] is **DENIED**, and that Plaintiff's Motion [#57] is **DENIED**.


DATED: September 10, 2021

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge